**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Chelsii R., individually and on behalf of C.R., | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. |
| v. | : | |
| Elwyn, Inc., | : | |
| Defendant. | : | |

# COMPLAINT

## PRELIMINARY STATEMENT

1. This action is brought under the "stay put" provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j), which requires Local Educational Agencies (LEAs) to implement a child's last-agreed upon educational placement while an IDEA dispute is pending.

2. Plaintiff Chelsii R. (Parent) brings this action individually and on behalf of her child, C.R., a four year old with a disability who qualifies for an Individualized Education Program (IEP) under the IDEA.

3. Defendant Elwyn is the LEA responsible for providing C.R. an IEP.

4. Parent filed a special-education due process complaint against Elwyn on September 16, 2026, and she amended her complaint on October 16, 2026.

5. Parent filed the complaint because Elwyn denied C.R. a free and appropriate public education (FAPE).

6. Elwyn refuses to provide C.R. her last-agreed upon educational placement. C.R.'s IEP requires Elwyn to afford her one-to-one personal care assistance (PCA), but Elwyn has not

provided C.R. a PCA since November 7, 2025.

7. In summer 2026, Elwyn represented to Parent that it would start providing C.R. a PCA, but it failed to do so.

8. Accordingly, on September 25, 2026, Parent filed a motion for emergency interim relief in her administrative due process case, asking the Pennsylvania Special Education Hearing Officer to enter an order enforcing C.R.'s stay-put rights under the IDEA. Parent requested an order:

> (i) Directing Elwyn to immediately provide, within 5 school days of the Order, the 1:1 PCA as required by the C.R.'s IEP; and
>
> (ii) Directing Elwyn, pending placement of a permanent 1:1 PCA, to immediately provide an appropriately trained substitute or interim 1:1 PCA so that C.R. is not without the mandated support on any school day.

9. On October 21, 2026, the hearing officer entered an order granting, in part, Parent's motion. The order is attached as Exhibit A.

10. The hearing officer agreed with Parent that C.R.'s last-agreed upon educational placement includes a PCA. The hearing officer found "that [C.R.]'s pending program and placement is that set forth in the current IEP, including a one-on-one PCA for a portion of [C.R.]'s school day[.]" H.O. Order, Ex. A at 3.

11. But the hearing officer concluded that she "does not . . . ha[ve] the legal authority" to enforce C.R.'s stay-put rights. H.O. Order, Ex. A at 3.

12. Parent brings this action to enforce C.R.'s right to her pendent placement under 20 U.S.C. § 1415(j).

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and under the IDEA.

14. Venue is proper under 28 U.S.C. § 1391(b).

15. Parent is not required to exhaust administrative remedies, *see, e.g.*, *R.B. v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 755-56 (E.D. Pa. 2010), *aff'd* 532 F. App'x 136 (3d Cir. 2013), but to the extent exhaustion is required, Parent fully exhausted her administrative remedies.

**PARTIES**

16. Parent Chelsii R. is the plaintiff and C.R.'s parent.

17. C.R. is a four-year-old child with severe autism.

18. By reason of her disability, C.R. requires early intervention special-education services.

19. Elwyn is a LEA under the IDEA, and at all relevant times to this complaint, Elwyn has been C.R.'s LEA.

20. Elwyn receives federal funding, in exchange for which it must provide children like C.R. FAPE and implement the placements in their IEPs.

**STATUTORY AND REGULATORY BACKGROUND**

21. Congress enacted the IDEA to "ensur[e] children with disabilities and the families of such children [have] access to a free appropriate public education and [to] improv[e] educational results for children with disabilities." 20 U.S.C. § 1400(c)(3).

22. The IDEA and its implementing regulations, 34 C.F.R. Part 300, *et seq.*, require states and LEAs that receive IDEA funds to provide children with disabilities FAPE.

23. A child is eligible for services under the IDEA if she has a disability and "by reason thereof, needs special education and related services." 34 C.F.R. § 300.8(a).

24. The IDEA requires states and LEAs to develop an Individualized Education Program (IEP) for qualifying children with disabilities. 20 U.S.C. § 1412(a)(4).

25. Each IEP must contain a statement of the student's present levels of academic achievement, measurable annual goals, a description of how the student's progress towards those goals will be measured, and a list of accommodations, supplementary aids and services, and modifications needed to help the student achieve her goals and be educated in the least restrictive environment. 20 U.S.C. § 1414(d)(1)(A)(i).

26. The LEA's IEP team is supposed to review and offer a new IEP annually. 20 U.S.C. § 1414(d)(4)(A).

27. IEPs must provide services and supports that are reasonably calculated to afford children FAPE. *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 390–91 (2017). The IEP is the centerpiece for the child's education. *Id*.

28. If an LEA fails to provide FAPE to a child, her parents may request a due process hearing.

29. Under the IDEA's "stay-put" provision, during the pendency of a due process proceeding "the child … must remain in his or her current educational placement." 34 C.F.R. § 300.518(a); see 20 U.S.C. § 1415(j).

30. A child's current educational placement is the "program" that her IEP requires. *See DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 153–54 (3d Cir. 1984). "[M]inor changes" to the program "will not generally" violate the stay-put provision, but an LEA violates the provision if it fails to provide services that are a "significant" part of "the child's learning experience." *Id.*

31. The stay-put provision functions as an automatic preliminary injunction: "[T]he statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or

a fair ground for litigation and a balance of hardships." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *see also Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996) (stay put is "an absolute rule in favor of the status quo," that is, the child's governing IEP).

**STATEMENT OF FACTS**

32. C.R. is a preschool-age child with severe autism.

33. C.R. is eligible for and receiving early intervention services from Elwyn at two locations: Easterseals and Belmont Academy Charter School.

34. On November 6, 2025, Elwyn issued an IEP for C.R.

35. The IEP, which is still in effect, prescribes a one-to-one PCA for three hours per day, five days per week at Belmont.

36. A PCA is a significant part of C.R.'s educational program.

37. C.R.'s most recent draft IEP, dated July 9, 2026, continues the one-to-one PCA, and Elwyn has recognized that C.R. should "continue a [PCA] service as she has previously demonstrated a need for this additional 1:1 support."

38. Belmont staff have reported that C.R. needs significant verbal, visual, and physical prompting and 1:1 adult support to maintain attention, attend to teacher-directed activities, and transition between activities.

39. Belmont staff have also notified Parent that it cannot support C.R.'s needs without a PCA, and that she cannot safely attend the program without one.

40. Even so, for almost twelve months Elwyn has not provided C.R. the required PCA.

41. Elwyn knows of and acknowledges its failure to provide the PCA.

42. Parent repeatedly expressed concerns to Elwyn about the missing PCA in writing, over the phone, and during IEP meetings.

43. Elwyn's failure to provide C.R. a 1:1 PCA has harmed, and continues to harm, her.

44. C.R. has regressed behaviorally since November 2025. For example, C.R.'s July 9, 2026 draft IEP documents that she frequently has tantrums and engages in aggressive behaviors that impedes her learning and that of others, including screaming, stomping, kicking, pushing, knocking objects over, and disrobing. *See* Draft IEP, Ex. B.

45. The lack of a PCA permeates C.R.'s school day and affects her safety, behavior, and ability to access instruction and communicate.

46. That is devastating for C.R., who is preschool-age and thus at a critical stage of development.

47. After Parent filed a due process complaint against Elwyn, she moved to enforce C.R.'s stay-put rights, requesting that the Pennsylvania Special Education Hearing Officer order Elwyn to immediately provide C.R. a PCA.

48. On October 21, 2026, the hearing officer entered an order finding that C.R.'s pendent placement includes her one-to-one PCA.

49. The hearing officer also found that there is "no disagreement" that Elwyn is not providing C.R. the PCA. H.O. Order, Ex. A at 2–3.

50. Elwyn did not deny that it is failing to provide a PCA. Instead, it sought to excuse its failure by asserting that is has "conducted extensive searches to staff the PCA position." But Elwyn receives substantial IDEA funding, and in exchange, it must comply with the IDEA and implement its students' educational placements. The Third Circuit explained long ago that "financial and administrative burdens" are no excuse for flouting that duty. *See Kruelle v. New Castle Cnty. Sch. Dist.*, 642 F.2d 687, 695 (3d Cir. 1981) ("[S]chools are required to provide a comprehensive range of services to accommodate a handicapped child's educational needs,

regardless of financial and administrative burdens.”).

51. Still, the hearing officer refused to order Elwyn to comply with Section 1415(j) of the IDEA and immediately provide C.R. a PCA because she concluded that she lacks legal authority to order that stay-put relief. *See* H.O. Order, Ex. A at 3.

52. As such, C.R. still does not have the PCA mandated by her current IEP.

53. The parties’ administrative due process proceedings remain pending.

54. The parties have not started trial yet, so the proceedings could remain pending for several more months. It is common for Pennsylvania due process proceedings to last months because witnesses often have limited availability and hearing officers, counsel, and school representatives inevitably have scheduling conflicts.

**COUNT I**
**ENFORCEMENT OF C.R.’S PENDENT PLACEMENT UNDER THE IDEA**

55. Parent incorporates paragraphs 1 through 54 as if fully set forth herein.

56. C.R.’s pendent placement includes the provision of a one-to-one PCA.

57. Elwyn is failing to provide C.R. the required PCA.

58. The parties’ due process proceedings are ongoing.

59. Under Section 1415(j) of the IDEA, Parent is entitled to a stay-put injunction—an automatic preliminary injunction—requiring Elwyn to provide the PCA pending resolution of the parties’ IDEA dispute.

60. Parent seeks enforcement of C.R.’s pendent placement—including provision of a one-to-one PCA—under 20 U.S.C. § 1415(j).

61. Parent requests an order directing Elwyn to immediately provide the one-to-one PCA that C.R.’s IEP requires and to maintain the PCA “during the pendency of” the parties’ IDEA “proceedings.” 20 U.S.C. § 1415(j).

62. Parent is entitled to a temporary restraining order, a preliminary injunction, and a permanent injunction enforcing C.R.'s stay-put rights.

**COUNT II**
**DECLARATORY RELIEF UNDER THE IDEA AND THE DECLARATORY JUDGMENT ACT**

63. Parent incorporates paragraphs 1 through 62 as if fully set forth herein.

64. The hearing officer erred by concluding that she lacks legal authority to enforce C.R.'s pendent placement.

65. Parent seeks declaratory relief in the form of an adjudication that hearing officers have authority to enforce stay-put under 20 U.S.C. § 1415(j).

**COUNT III**
**ATTORNEY'S FEES AND COSTS UNDER THE IDEA**

66. Parent incorporates paragraphs 1 through 65 as if fully set forth herein.

67. Parent prevailed at the due process hearing.

68. The hearing officer granted in part Parent's stay-put motion, ruling that C.R.'s pendent placement includes a PCA.

69. That is important and significant declaratory relief.

70. As a prevailing party, Parent is entitled to reasonable attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B) for the due process hearing and this action.

**WHEREFORE**, Parent respectfully requests that this Court:

(a) Order Elwyn to immediately provide C.R. the one-to-one PCA required by her IEP and to maintain the PCA "during the pendency of" the parties' IDEA "proceedings," 20 U.S.C. § 1415(j);

(b) Declare that hearing officers have authority to enforce stay-put under 20 U.S.C. § 1415(j);

(c) Award Parent her attorney's fees and costs; and

(d) Grant any other relief that this Court deems appropriate.

Respectfully submitted,

Lindsay Burrill-VanDellen

LINDSAY BURRILL-VANDELLEN, ESQUIRE
KEVIN A. GOLEMBIEWSKI, ESQUIRE
DAVID J. BERNEY, ESQUIRE
Berney & Sang
8 Penn Center
1628 JFK Boulevard, Ste. 1000
Philadelphia, PA 19103
laburrillvandellen@berneylaw.com
kag@berneylaw.com
djberney@berneylaw.com
215-564-1030 (office)
215-751-9739 (fax)
Attorneys for Parent

Dated: October 26, 2026.